**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WILLIAM MCMICHAEL,**        ) | |
| )  | |
| **Plaintiff,**        ) | |
| )  | |
| **v.**        ) | **Civil Action No. 11-2119 (RMC)** |
| )  | |
| **UNITED STATES DEPARTMENT OF**        ) | |
| **DEFENSE,**        ) | |
| )  | |
| **Defendant.**        ) | |
| )  | |

**MEMORANDUM OPINION**

William McMichael, a journalist, complains that the United States Department of

Defense improperly responded to his requests for information from the United States Strategic

Command.  The initial request asked for records from a specific Inspector General investigation

into misconduct allegations concerning a specific Navy captain.  To each of three requests,

USSTRATCOM neither confirmed nor denied that any records existed.  The Court finds that

DOD's response was improper and remands for reconsideration.

**I.  FACTS**

The following facts are not in dispute.  On March 27, 2011, Mr. McMichael, on

behalf of *Navy Times*,[1]  submitted a request under the Freedom of Information Act, 5 U.S.C. §

---

[1] At the time of the requests, Mr. McMichael was a journalist with *Navy Times*.  Pl. Mem. [Dkt. 13], McMichael Decl. [Dkt. 13-2] ¶ 1.  "*Navy Times* is an independent journalistic organization that reports on matters of public concern involving the U.S. military."  Pl. Mem., Pl. Resp. Def. Statement Material Facts [Dkt. 13-1] ¶ 10.  Mr. McMichael is now a journalist with *News Journal* in Wilmington, Delaware.  McMichael Decl. at 1.

552, to United States Strategic Command ("USSTRATCOM")[2] for access to and a copy of the

"Inspector General investigation into a complaint of an allegedly abusive command climate

within the command's J4 created by Captain William Powers [sic] from October 2008 to March

2010." Exs. to McMichael Decl., Ex. F.  Captain Power served as USSTRATCOM's Director of

Logistics (J4) during this time.[3]  *See* Exs. to McMichael Decl, Ex. C (formal complaint).  In a

letter issued on April 4, 2011, by Vice Admiral Cecil D. Haney, USSTRATCOM denied Mr.

McMichael's request pursuant to 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)") neither

confirming nor denying the existence of "such records."[4]  *See id.*, Ex. G.

       Mr. McMichael filed an administrative appeal on April 11, 2011, to the Defense

Freedom of Information Policy Office.  *See* Def. Mot. [Dkt. 10], Statement of Material Facts

[Dkt. 10-1] ("DOD Facts") ¶ 3.  By letter dated May 13, 2011, the FOIA Appellate Authority for

the Office of the Secretary of Defense, William E. Brazis, Deputy Director of Administration

and Management, affirmed the denial of his request.  *See id.* ¶ 4; Exs. to McMichael Decl., Ex.

H.

---

[2] "USSTRATCOM integrates and coordinates the necessary command and control capability to provide support with the most accurate and timely information for the President, the Secretary of Defense, other National Leadership and regional combatant commanders." Pl. Mem., Exs. to McMichael Decl. [Dkt. 13-3], Ex. Q.

[3] Although the parties disagree about the significance of Captain Power's position as J4 Director, it is not disputed that he held a position of responsibility.  The J4 Director is "charged with planning, coordinating and executing logistics functions of supply, mobility, maintenance, engineering, sustainment and munitions management in support of command missions." *See* Exs. to McMichael Decl., Ex. R.  The position also requires direction and oversight of approximately 49 people.  *See* Def. Reply [Dkt. 18] at 3.

[4] A response that neither confirms nor denies the existence of requested records is called a "*Glomar*" response, named for a secret government ocean vessel, the *Hughes Glomar Explorer*. *See Phillippi v. CIA*, 546 F.2d 1009, 1010–11 (D.C. Cir. 1976) (a case brought under FOIA in which the plaintiff requested documents concerning the *Hughes Glomar Explorer* from the CIA).

Mr. McMichael submitted two additional FOIA requests on April 11, 2011, again on behalf of *Navy Times*.  The first requested "access to and a copy of the U.S. Strategic Command Inspector General investigation into a complaint of an abusive command climate in the command's J4 from October 2008 to March 2010."  Exs. to McMichael Decl., Ex. I.  The second FOIA request asked for:

> access to and a copy of the record of payment or payments made to an unknown private firm for the transcription of interviews made during a U.S. Strategic Command Inspector General investigation into a complaint of an abusive command climate in the command's J4 from October 2008 to March 2010.  Such expenditures are not classified and are a matter of public record.  Please include all relevant information including the amount or amounts of such payments; the dates the payments were made; the specific reason for each payment, such as the number of hours of transcription each payment covered; and for what specific purpose the [sic] were made.

*Id.*, Ex. J.  Vice Admiral Haney denied these requests with *Glomar* responses, by separate letters issued on May 23, 2011.  *Id.*, Exs. K & L.  Mr. McMichael appealed on May 24, 2011, and Deputy Director Brazis affirmed Vice Admiral Haney's determination by individual letters dated July 12, 2011.  *Id.*, Exs. M & N; DOD Facts ¶¶ 7-8.  Mr. McMichael filed suit on November 29, 2011.  *See* Compl. [Dkt. 1].

While admitting these facts, Mr. McMichael adds the following additional background information, which is uncontested.   A number of USSTRATCOM employees knew that the IG conducted an investigation into allegations of an abusive environment in the J4 command under Captain Power.  *See* McMichael Decl. ¶¶ 2-9; Exs. to McMichael Decl., Exs. A-E.  A USSTRATCOM employee reported that the investigation generated over 1,000 pages of testimony and more than $6,000 in transcription fees.  *See* Exs. to McMichael Decl., Exs. A & B.  That same employee provided *Navy Times* with a copy of a formal complaint sent to

USSTRATCOM.  *See id.*, Ex. C.  A different USSTRATCOM employee informed Mr.

McMichael that the investigation included an estimated 30 witnesses and lasted more than eight

months but closed with no action taken.  *See* McMichael Decl. ¶ 5.  Still two additional

employees of USSTRATCOM confirmed that a formal investigation occurred and that the nature

and existence of the investigation were well known within the command.  *See id.*  ¶¶ 8-9.  After

completing his tour as J4 Director at USSTRATCOM, Captain Power became the Commanding

Officer at the United States Naval Supply Systems Command's Fleet Logistics Center Puget

Sound.  *See* Exs. to McMichael Decl., Ex. S.  As a reporter, Mr. McMichael previously has used

FOIA to receive redacted reports into alleged misconduct by high-ranking Navy personnel.  *See,*

*e.g., id.*, Ex. O.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6) challenges the adequacy of a complaint on its face.  Fed. R. Civ. P. 12(b)(6).

A complaint must be sufficient to "give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

quotation marks and citation omitted).  Although a complaint does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Id.*  To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim for relief that is "plausible on its face."  *Id.* at 570.

A court must treat the complaint's factual allegations as true, "even if doubtful in

fact."  *Id.* at 555.  But a court need not accept as true legal conclusions set forth in a complaint.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In deciding a motion under Rule 12(b)(6), a court

may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### B.  Motion for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980).  In a FOIA case, the Court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*,

656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir.

1973).   An agency must demonstrate that "each document that falls within the class requested

either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's

inspection requirements."  *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotation

mark and citation omitted).

## III.  ANALYSIS

FOIA requires public disclosure of government records, subject to nine listed

exceptions.  *See* 5 U.S.C. § 552(b); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).

USSTRATCOM answered each of Mr. McMichael's three FOIA requests with a *Glomar*

response, neither admitting nor denying the existence of responsive records regarding an IG

investigation into Captain Power, an IG investigation of the same allegations against an

unspecified person, and records of payment for transcription of related investigative interviews.

A *Glomar* response is appropriate when "to answer the FOIA inquiry would cause harm

cognizable under a[ ] FOIA exception—in other words, in cases in which the existence or

nonexistence of a record is a fact exempt from disclosure under a FOIA exception."  *Int'l*

*Counsel Bureau v. CIA*, 774 F. Supp. 2d 262, 266 (D.D.C. 2011) (alteration in original) (internal

quotation mark and citation omitted); *see also Wolf*, 473 F.3d at 374.  In invoking its *Glomar*

response, USSTRATCOM relied on FOIA Exemption 7(C), which allows an agency to withhold

from disclosure information "compiled for law enforcement purposes" that "could reasonably be

expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

Accordingly, the question presented is whether Exemption 7(C), which allows

nondisclosure of certain records, also allows a *Glomar* response to Mr. McMichael's FOIA

requests.  In other words, is the very existence or nonexistence of the IG investigation a fact that

is exempt from disclosure or, under these specific circumstances, must USSTRATCOM perform

the normal record-by-record review, redaction, decision-to-withhold (if any), and support its decisions in court?  *Compare Phillippi*, 546 F.2d at 1013 ("When the Agency's position is that it can neither confirm nor deny the existence of the requested records, there are no relevant documents for the court to examine other than the affidavits which explain the Agency's refusal."), *with Vaughn*, 484 F.2d at 827 (requiring "a system of itemizing and indexing" the relevant documents by the government for the opposing counsel and the court to review when it relies on an exemption to withhold disclosure).  The question of disclosure of the *existence* or nonexistence of the IG investigation is a distinct question from disclosure of the *content* of the records.  *See People for the Ethical Treatment of Animals v. Nat'l Insts. of Health Dep't of Health & Human Servs.*, 853 F. Supp. 2d 146, 155 (D.D.C. 2012) ("So, the question the Court must resolve at this point is not whether the documents need to be produced but whether merely acknowledging their existence invades an interest that the FOIA exemptions were designed to protect."), *aff'd in part*, No. 12-5183, 2012 WL 5896791 (D.C. Cir. Nov. 2, 2012).  The Court only decides the validity of DOD's *Glomar* response and makes no decision on the applicability of any FOIA exemption to disclosure of any specific record, in whole or in part.

When considering "whether the existence of agency records *vel non* fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases."  *Wolf*, 473 F.3d at 374; *see also Int'l Counsel Bureau*, 774 F. Supp. 2d. at 267.  The threshold inquiry in determining the applicability of Exemption 7(C) is whether the documents sought were "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7)(C).  A record is compiled for law enforcement purposes when it "focus[es] directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions."  *Rural Hous. Alliance v. Dep't of Agric.*, 498 F.2d 73, 81 (D.C. Cir. 1974).

When a military investigation may result in a finding of a violation of law or regulation, records compiled pursuant to such investigation are for law enforcement purposes. *See Lurie v. Dep't of the Army*, 970 F. Supp. 19, 36 (D.D.C. 1997) (finding that records concerning an informal Army investigation into alleged misconduct by command personnel were compiled for law enforcement purposes). Mr. McMichael does not dispute that the records he seeks, if they exist, were compiled for law enforcement purposes because the IG investigation concerned "allegations of misconduct, which, if proven to be true, would have constituted violations of [law and regulations]." Def. Mot., Def. Mem. [Dkt. 10-2] at 8.

Once it is established that records were compiled for law enforcement purposes, the legal standard for withholding them, in whole or in part, under 7(C) is that "the privacy interest at stake outweighs the public's interest in disclosure." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995) (citing *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989)). "[I]ndividuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation." *Id.* at 894. At the same time, law enforcement records pertaining to a specific individual may "be cloaked with the public interest if the information would shed light on agency action." *Quiñon v. FBI*, 86 F.3d 1222, 1231 (D.C. Cir. 1996) (citation omitted).

Captain Power has a legitimate interest in keeping private the record of any investigation into allegations of an abusive command climate. *See Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984) ("[I]ndividuals have a strong interest in not being associated unwarrantedly with alleged criminal activity."). But Captain Power's status as a federal employee with leadership responsibilities diminishes his privacy interest. *See id.* at 92-94 (distinguishing between low-

level and high-level employees when applying the Exemption 7(C) balancing test); *see also Providence Journal Co. v. Dep't of Army*, 981 F.2d 552, 568 (1st Cir. 1992) ("[A] federal government employee investigated for criminal misfeasance relating to the performance of official duties generally possesses a diminished privacy interest.").  Additionally, Mr. McMichael presented evidence that some number of USSTRATCOM employees were aware of the investigation and its subject.  *See* McMichael Decl. ¶¶ 2-9; Exs. to McMichael Decl., Exs. A-E.  Captain Power himself informed some of those under his command about the investigation and its outcome.[5]  *See* McMichael Decl. ¶ 7; *id.*, Exs. to McMichael Decl., Ex. E.  Although this fact does not eliminate his privacy interest, it diminishes it to a limited extent.  *See Kimblerin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998) (concluding that a statement to the press by the subject of the investigation "undoubtedly does diminish his interest in privacy" although it did not eliminate his privacy interest "in avoiding disclosure of the details of the investigation").

The public interest must also be considered.  To secure disclosure of requested information when the government relies on Exemption 7(C), a plaintiff must show that (1) the public interest is significant—"an interest more specific than having the information for its own sake"—and (2) "the information is likely to advance that interest."  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).  The Court agrees with Mr. McMichael's assertion that the public has a strong interest in knowing whether the IG investigated allegations of an abusive command climate by the J4 Director.  *See* Pl. Mem. at 9-11.  Disclosure of whether the

---

[5] DOD misses the mark with its argument that the information Mr. McMichael seeks has not been "officially acknowledged" by DOD.  *See* Def. Reply at 9-12.  Mr. McMichael does not claim that DOD "officially acknowledged" the information requested but instead states that individuals within the J4 Command were aware of and participated in the investigation.  *See* Pl. Mem. at 9.  DOD fails to rebut these facts.  Although not determinative, the fact that individuals in the command knew about the investigation is a consideration for the 7(C) Exemption balancing test.

investigation took place will provide insight into what the government is up to, specifically if the IG's office is carrying out its official duties.  *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 773 (explaining that the public has an interest in information that "sheds light on an agency's performance of its statutory duties."); *Lewis v. Dep't of Justice*, 867 F. Supp. 2d 1, 19 (D.D.C. 2011) ("The only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." (quoting *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (alteration in original omitted) (internal quotation marks omitted)).  Further, the public interest in information regarding an investigation is strengthened when the subject of the investigation is a federal employee in a leadership position.  *See Stern*, 737 F.2d at 92 ("[W]e agree that the level of responsibility held by a federal employee, as well as the activity for which such an employee has been censured, are appropriate considerations for determining the extent of the public's interest in knowing the identity of that censured employee.").  In the context of a non-responsive *Glomar* answer, the Court concludes that Mr. McMichael's asserted public interest is significant and that the information he seeks is likely to advance this interest.[6]

Finally, the Court balances the privacy interest with the public interest.  Balancing Captain Power's diminished expectation of privacy against the public's interest in knowing whether the IG investigated allegations of misconduct, it must be concluded that the public interest prevails.  Particularly where the fact of the IG investigation was known to a

---

[6] The Court rejects DOD's contention that Mr. McMichael must produce evidence of government wrongdoing to secure acknowledgment of the existence or nonexistence of the IG investigation.  *See* Def. Mem. at 12-14.  Mr. McMichael has not alleged that USSTRATCOM acted "negligently or otherwise improperly," *Favish*, 541 U.S. at 174, but instead contends that the public has an "independent interest" in knowing about the investigation itself.  *See* Pl. Mem. at 9 n.3.  Under these circumstances and when the Court *only* considers the propriety of the *Glomar* response, *Favish*'s heightened evidentiary requirement is inapplicable.

number of people and the identity of the person under investigation was equally apparent, a *Glomar* response cannot satisfy.  The Court concludes, on these facts and this Complaint, that a *Glomar* response was inappropriate even if the records in question, if they exist, may otherwise be exempt from disclosure under FOIA Exemptions 7(C) and 6.[7]

### IV.  CONCLUSION

DOD's motion to dismiss, or in the alternative for summary judgment [Dkt. 10] will be denied without prejudice.  The case will be remanded to DOD to perform a FOIA analysis of the requested documents.   In light of the remand, Mr. McMichael's cross-motion for summary judgment [Dkt. 13] will also be denied.

Date: December 18, 2012

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

---

[7] DOD argues that the requested report is also exempt under 5 U.S.C. § 552(b)(6) ("Exemption 6") for the first time in this Court.  *See* Def. Mem. at 14.  Exemption 6 also requires a balancing of the private and public interests.  *See Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007).  Exemption 6, however, requires courts to tilt the balance of interests toward disclosure.  *Id.* Because the Court concludes that DOD's *Glomar* response cannot suffice under Exemption 7(C), which does not require a balance toward disclosure, the Court need not also consider separately whether DOD can rely on Exemption 6 to neither confirm nor deny the existence of the requested documents.  *See Roth v. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (explaining that Exemption 7(C) is broader than Exemption 6).